The trial court made findings of fact and conclusions of law and entered a judgment in accordance with them. We set forth in its entirety the "Order and Judgment" appealed from:
 "This case came on for nonjury trial on April 13, 1994. At the conclusion of the plaintiff's [Robert C. Tonsmeire's] case, all defendants[1] moved for involuntary dismissal pursuant to Rule 41(b), Ala.R.Civ.P., and, based upon the evidence presented by the plaintiff and [based upon] the law, the court grants the defendants' motions and enters the following findings of fact, conclusions of law, and judgment. *Page 603 
"FINDINGS OF FACT
 "Based upon the plaintiff's opening statement and the pleadings, the plaintiff's claims against AmSouth Bank, N.A., and Ken Niemeyer are for an accounting and [damages for an alleged] breach of fiduciary duty in connection with administration of trusts for which the plaintiff was a beneficiary and [for damages] for fraud in connection with a certain assignment of an interest in insurance policies. The plaintiff's claims against Michael C. Delaney, while variously stated, [allege] negligence, breach of contract, or other wrongdoing arising from legal services provided in connection with Mr. Delaney's role in liquidation of a certain trust. Finally, the plaintiff's claims against his brothers Arthur C. Tonsmeire III, Joseph Lewis Tonsmeire, Daniel Lee Tonsmeire, and Edward C. Tonsmeire ('older brothers') [allege] breach of contract and fraud arising from these defendants' failure to convey or transfer to the plaintiff an interest in certain real estate in Mobile County, Alabama, and an interest in an island known as Barbaretta off the coast of Honduras.
 "1. The plaintiff, Robert C. ('Mike') Tonsmeire, and his older brothers were beneficiaries of a certain trust created in 1951 ('1951 Trust') by their father, Arthur C. Tonsmeire, Jr. The 1951 Trust terminated by its own terms when the youngest child, the plaintiff, reached age thirty. First National Bank of Mobile (AmSouth as successor) was trustee of the 1951 Trust. The plaintiff was born in August 1955.
 "2. In October 1978, the plaintiff created a revocable trust ('1978 Trust'). Again, First National Bank of Mobile (AmSouth as successor) was trustee of the trust. The 1978 Trust was created to receive assets from the 1951 Trust as they were available to the plaintiff under the terms of the 1951 Trust.
 "3. The plaintiff received periodic statements as to the condition of the 1951 Trust and the 1978 Trust on at least a yearly basis and as frequently as quarterly.
 "4. Niemeyer was the trust officer acting for AmSouth from time to time in connection with the 1951 Trust and the 1978 Trust.
 "5. The 1951 Trust terminated by its own terms in 1985.
 "6. The plaintiff terminated the 1978 Trust by letter dated July 13, 1987.
 "7. On September 4, 1987, the plaintiff received distribution of certain assets from the 1978 Trust, and he signed a 'Release and Discharge.' The Release and Discharge provided:
 " 'I understand that I am entitled to personally examine or to authorize a person I may choose to examine the trustee's accounts relative to the trust. I further understand that I may request a formal court accounting of all actions of the trustee of the trust.
 " 'I hereby waive any request on my part for a formal court accounting of the trustee's actions in managing the trust. I am satisfied that the trustee's accounts and actions have been and are correct and in good order.
 " 'Effective upon receipt by me of the trust assets to which I am entitled, I do hereby release and discharge the trustee from all liability with respect to its actions as trustee of the trust.'
 "8. The plaintiff knew the contents of the Release and Discharge before signing it, and he has no claim that the Release and Discharge was fraudulently induced. As a factual matter, the court finds the Release and Discharge valid and binding.
 "9. Also on September 4, 1987, the plaintiff signed an 'Assignment of Rights,' by which he assigned rights he had under policies of insurance on the life of his father, Arthur Tonsmeire, Jr., which policies were held in trust by AmSouth for the plaintiff and the older brothers.
 "10. Within a year and one-half of the letter of July 13, 1987, the plaintiff received all assets held in trust for him by AmSouth.
 "11. The plaintiff claims that Delaney did not properly represent him in connection with the 1978 Trust liquidation. *Page 604 
 "12. The plaintiff failed to present any evidence, expert or otherwise, that AmSouth or Niemeyer breached any fiduciary duty. The plaintiff made conclusory claims of mismanagement by these defendants, but never produced evidence of specific acts of mismanagement, and he admitted that he received all assets held in trust. Further, he failed to produce any expert testimony of any deviation from acceptable standards by AmSouth or Niemeyer as fiduciaries in their handling of the trusts.
 "13. Before suit was filed, AmSouth and Niemeyer provided the plaintiff an accounting, and full information relating to the trusts was made available to him.
 "14. The plaintiff failed to produce expert testimony that Delaney deviated from the accepted standards for attorneys providing services under the same or similar circumstances.
 "15. The plaintiff claims that, upon the death of his father on July 25, 1989, the plaintiff was due an interest in Lot D, Block 3, Dog River Division, Hollinger's Island. This claim is based upon an alleged oral agreement among him, his father, and the older brothers before his father's death. There is no writing entitling the plaintiff to any interest in the property. The plaintiff did not receive the property in his father's will. In fact, in December 1988, he deeded away his interest in the property.
 "16. Similarly, the plaintiff claims that the older brothers should convey to him stock or an interest in the Island of Barbaretta located in Honduras. His entitlement to this interest, he says, arises from an agreement among the same people [who made the agreement] referred to in Paragraph 15. Again, there is no writing evidencing the plaintiff's interest in stock or in the island, nor is there any written agreement to provide him with stock or an interest in the island. Again, the plaintiff did not receive any such interest under his father's will.
 "17. The 1951 Trust and the 1978 Trust terminated, and possession by AmSouth of trust property became adverse more than six years before [the] filing of the complaint.
 "18. The plaintiff discovered, or should have discovered, the alleged fraud by AmSouth/Niemeyer more than two years prior to the filing of his complaint.
 "19. Any alleged malpractice on the part of Delaney occurred more than four years prior to the filing of the complaint, but after August 1987.
 "20. The plaintiff discovered, or should have discovered, any alleged malpractice on the part of Delaney more than six months prior to the filing of the complaint.
 "21. The plaintiff discovered, or should have discovered, any alleged fraud on the part of his older brothers more than two years prior to the filing of the complaint.
"CONCLUSIONS OF LAW
 "1. The [limitations period] for [an action based on] breach of fiduciary duty begins to run once the fiduciary relationship is terminated and possession of trust property by the trustee becomes adverse. Benners v. First National Bank, 247 Ala. 74, 22 So. 435 (1945).
 "2. The statute of limitations for breach of fiduciary duty is two years. Davis v. Brown, 513 So.2d 1001 (Ala. 1987); Faith, Hope, Love, Inc. v. First Alabama Bank of Talladega County, N.A., 496 So.2d 708 (Ala. 1986).
 "3. The statute of limitations for legal malpractice is two years from the date of the alleged malpractice, or, [if an action would be barred by the two-year limit, then] six months after discovery of the malpractice, but in no event more than four years after the alleged malpractice. Ala. Code 1975, § 6-5-574.
 "4. The statute of limitations for fraud is two years from the date the fraud is discovered or should have been discovered. Ala. Code 1975, § 6-2-3.
 "5. The Statute of Frauds requires that any agreement to convey an interest in land . . . be in writing. Ala. Code 1975, § 8-9-2.
 "6. Any agreement for the sale of stock must be in writing. Ala. Code 1975, § 7-8-319. *Page 605 
 "7. Expert testimony is required in order to establish deviation from a standard of care in connection with [an] alleged breach [of an attorney's standard of care]. Ala. Code 1975, § 6-5-580.
"It is therefore ORDERED, ADJUDGED, and DECREED:
 "1. That a judgment be, and it hereby is, entered on behalf of AmSouth Bank, N.A., and Ken Niemeyer, and against the plaintiff, Robert C. Tonsmeire.
 "2. That a judgment be, and it hereby is, entered on behalf of Michael C. Delany, and against the plaintiff, Robert C. Tonsmeire.
 "3. That a judgment be, and it hereby is, entered on behalf of Arthur C. Tonsmeire III, Joseph Lewis Tonsmeire, Daniel Lee Tonsmeire, and Edward Tonsmeire, and against the plaintiff, Robert C. Tonsmeire.
 "4. That costs be taxed to the plaintiff, Robert C. Tonsmeire.
"Dated this the 27th day of April 1994.
"/s/ Robert T. Cunningham
"CIRCUIT JUDGE"
We adopt the trial court's "Order and Judgment" as the opinion of this Court.
AFFIRMED.
MADDOX, ALMON, HOUSTON, INGRAM, COOK and BUTTS, JJ., concur.
[1] AmSouth Bank, N.A.; Kenneth E. Niemeyer; Michael C. Delaney; Arthur C. Tonsmeire III; Joseph Lewis Tonsmeire; Daniel Lee Tonsmeire; and Edward Culpepper Tonsmeire.